UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| VICKI BUDD, as Personal Representative and Administrator of the Estate of JEROD SCOTT DRAPER, and next friend of the minor child, C.J.D., <br><br> Plaintiff, <br><br> v. <br><br> RODNEY V. SEELYE, Individually and in his official capacity as Harrison County Sheriff, NICHOLAS SMITH, Individually and in his official capacity as Harrison County Sheriff, ADVANCED CORRECTIONAL HEALTHCARE, INC., CAPTAIN DUSTIN CUNDALL, SERGEANT MATTHEW HULSEY, LIEUTENANT BRENDEN SATORI, MICHAEL GREGORY, and ROY WASHINGTON, <br><br> Defendants. | Case No.: 4:19-cv-00231-SEB-DML |

**PLAINTIFF'S STATEMENT OF CLAIMS**

COMES NOW, Plaintiff, Vicki Budd, as Personal Representative and Administrator of the Estate of Jerod Scott Draper and next friend of the minor child, C.J.D, by counsel, and for *Plaintiff's Statement of Claims*, filed pursuant to the Case Management Plan, state the following:

Claim No. 1: Plaintiff will prove by a preponderance of the evidence that, on October 4, 2018, Sergeant Matthew Hulsey, an employee of the Harrison County Sheriff's Department was acting "under color of law" by misusing his authority derived from his official position. Acting in his official capacity and on behalf of the Harrison County Sheriff's Department, the Defendant, Sergeant Matthew Hulsey, judging from the totality of the circumstances, used

1

unreasonable force on at least six separate occasions against the decedent, Jerod Scott Draper, a pretrial detainee at the Harrison County Sheriff's Department.

In support of this contention, the Plaintiff will demonstrate that (1) the application of force was intentional; (2) the need for use of force was minimal; (3) the use of force was greater than reasonably necessary; (4) the Plaintiff sustained injuries as result of the force used; (5) the Plaintiff posed no threat to officer safety at the time the force was used; Defendant made no effort to limit the amount of force used; and (6) Plaintiff was not actively resisting at the time the force was used.

The evidence shows that Matthew Hulsey tased Jerod Draper on six separate occasions using a drive stun. On each occasion that the force was applied, Matthew Hulsey intentionally placed the taser on Jerod Draper's naked body, pulled the taser's trigger, and held the taser until it needed to reset. Jerod Scott Draper was seated, naked in a five point restraint chair, which locked across his arms, legs, and chest, with a spit mask and helmet covering his head. While restrained, the decedent posed no immediate danger to the officers. When the first discharges of the taser failed to gain any compliance, Matthew Hulsey continued to discharge his taser on the restrained Draper. Draper could not have escaped nor actively resisted any of Hulsey's triggers of the taser. Jerod's injuries from the taser were photographed following the incidents.

In addition to above-stated facts, there were potential alternatives available to Matthew Hulsey – the padded cell in the Harrison County Jail – to minimize any danger Jerod could have posed to himself. This alternative was never used nor considered by Matthew Hulsey. Throughout the period in which Draper was tased, multiple officers were in the room with Matthew Hulsey. Toward the final deployments of the taser by Matthew Hulsey, Jerod is visibly bleeding from the wounds as well as from his mouth.

<u>Claim No. 2</u>:   Plaintiff will prove by a preponderance of the evidence that, on October 4, 2018, Nurse/Reserve Officer Michael Gregory, an employee of the Harrison County Sheriff's Department was acting "under color of law" by misusing his authority derived from his official position. Acting in his official capacity and on behalf of the Harrison County Sheriff's Department, the Defendant, Nurse/Reserve Officer Michael Gregory, judging from the totality of the circumstances, used unreasonable force against the decedent, Jerod Scott Draper, a pretrial detainee at the Harrison County Sheriff's Department.

In support of this contention, the Plaintiff will demonstrate that (1) the application of force was intentional; (2) the need for use of force was minimal; (3) the use of force was greater than reasonably necessary; (4) the Plaintiff sustained injuries as result of the force used; (5) the Plaintiff posed no threat to officer safety at the time the force was used; Defendant made no effort to limit the amount of force used; and (6) Plaintiff was not actively resisting at the time the force was used.

The evidence shows that Michael Gregory, the jail nurse and part-time reserve sheriff's deputy, removed his own taser and discharged his taser in "probe" mode towards Draper's inner thigh in an attempt to cause neuro-muscular incapacitation. Draper had already been tased in drive stun mode by Matthew Hulsey, and was still restrained, naked in the five point restraint chair. The probes deployed but failed to attach correctly. Then, Nurse Gregory attempted to complete the circuit and trigger incapacitation by holding the taser to Draper's opposite inner thigh. This attempt at incapacitation failed but still resulted in Draper receiving a shock from the taser.

As stated above, Draper could not have resisted due to being restrained and held down by other officers in the room. He did not pose a threat to the officers, and the taser had proven ineffective. Photographs of the wounds from the probes were taken by the officers.

In addition to his use of the tasers, Nurse/Reserve Officer Gregory used his own foot to stomp and press on Draper's restrained and bare foot on two occasions while Draper was being tased and forcibly held down by other officers. It is undisputed that this "technique" is not an authorized use of force employed by Harrison County Sheriff's Office. Based on the evidence, this use of force was merely intended as gratuitous punishment.

<u>Claim No. 3</u>:   Plaintiff will prove by a preponderance of the evidence that, on October 4, 2018, Sergeant Matthew Hulsey, Lieutenant Brenden Satori, Captain Dustin Cundall, and Nurse/Reserve Officer Michael Gregory, employees of the Harrison County Sheriff's Department were acting "under color of law" by misusing their authority derived from their official positions. Acting in their official capacities and on behalf of the Harrison County Sheriff's Department, the Defendants, judging from the totality of the circumstances, used unreasonable force against the decedent, Jerod Scott Draper, a pretrial detainee at the Harrison County Sheriff's Department.

In support of this contention, the Plaintiff will demonstrate that (1) the application of force was intentional; (2) the need for use of force was minimal; (3) the use of force was greater than reasonably necessary; (4) the Plaintiff sustained injuries as result of the force used; (5) the Plaintiff posed no threat to officer safety at the time the force was used; Defendant made no effort to limit the amount of force used; and (6) Plaintiff was not actively resisting at the time the force was used.

On two separate occasions, Jerod Scott Draper was placed in a five point restraint chair while inside the medical isolation cell in Harrison County Jail. The placements in the chair were both unreasonable uses of force. The justification for using the restrain chair was to protect property of the Harrison County Jail – namely a steel door – and/or to protect Jerod Draper from himself. Both justifications fail to acknowledge that Draper could have been placed in the padded cell next door to the medical isolation cell. It was less restrictive and would have prevented the any potential threat Draper posed to himself.

Claim No. 4:   Plaintiff will prove by a preponderance of the evidence that, on October 4, 2018, Plaintiff Jerod Scott Draper denied medical care while in the custody of the Harrison County Sheriff's Department. The Plaintiff had a serious medical need that was so obvious even someone who is not a doctor would recognize that it requires treatment. Sergeant Matthew Hulsey, Lieutenant Brenden Satori, Captain Dustin Cundall, and Nurse/Reserve Officer Michael Gregory were aware of or strongly suspected facts showing a strong likelihood that Plaintiff had a serious medical need – a drug overdose – but refused to confirm whether these facts were true. The Defendants failed to take reasonable measures to provide treatment for the serious medical need.

For the non-medical professionals and based on the totality of the circumstances, the need was obvious, the need was serious, and there were no legitimate reasons for delaying or denying medical care. In the case of Nurse Michael Gregory, the inference may be drawn that he consciously failed to take reasonable measures because his failure to act was such a substantial departure from accepted professional judgment, practice, and standards that it showed a complete abandonment of medical judgment. As a result of Defendant's inactions, Plaintiff was harmed, suffering unnecessary pain and death.

The evidence shows that Jerod Scott Draper was placed under arrest. Prior to his arrival at the Harrison County Jail, the Plaintiff had already attempted suicide and was suspected by the arresting officer of concealing drugs. Due to this suspicion, Jerod Draper was strip-searched upon arrival at the jail, but no drugs were found on his person. At intake, Jerod Draper was sweating, agitated, and consuming large amounts of water.

Following intake, Jerod Draper was placed in medical isolation on suicide watch. He continued pacing and sweating throughout his stay on suicide watch. Around 10:00 a.m., Captain Dustin Cundall entered Draper's cell to talk to him after his first "ride" in the restraint chair. Captain Cundall acknowledges that Draper admitted to "drugging" the night before. There is no indication that Captain Cundall followed up regarding the type of drugs ingested, when the drugs were ingested, or any other information relevant to Draper's admission.

Following Draper's admission to "drugging," the Defendants were aware of a serious medical need. In fact, it is undisputed that the medical technician, Kim Jennings, provided Draper with Librium for detoxification, indicating some knowledge that medical treatment was appropriate. However, Roy Washington, the on-call nurse practitioner employed by Advanced Correctional Healthcare, denies prescribing the medication and denies being called by anyone at Harrison County Jail regarding Jerod Draper. His cell phone records support Washington's assertions. No other staff at Harrison County Jail was authorized to prescribe medication.

After lunch, Draper's condition worsened. He began to spin in tight circles, becoming dizzy and falling down. He was also seen pacing back and forth across the medical isolation cell, walking directly into the bed frame, the small bench, and the walls. He was eventually placed in the restraint chair, with helmet and spit mask, but he continued rocking back and forth against the chair. Despite the known facts, including his continued sweating, delirious behavior,

spinning, walking into walls, and admitted drug use, Sergeant Hulsey, Lieutenant Satori, Captain Cundall, and Nurse Gregory never attempted to render any form of medical aid. The Defendants failed to take vitals, failed to call the nurse practitioner, and failed to acknowledge the obvious medical distress that was apparent on the jail video.

Eventually, EMS was called to the scene. However, before he could be removed from the restraint chair, Jerod Draper's body went limp, and he became unresponsive. He was pronounced dead at the ER. Based on the autopsy, Jerod Draper died of acute methamphetamine overdose. It is undisputed that Draper never admitted to ingesting a bag of methamphetamine; however, the Defendants were aware of his serious medical need and ignored the obvious signs. As a result of their failure to act, Draper was harmed, suffering a prolonged and agonizing death.

Claim No. 5:   As described above, Officer Matthew Hulsey and Nurse/Reserve Officer Michael Gregory engaged in unreasonable use of force against the decedent Jerod Scott Draper by tasing him on multiple occasion while he was restrained. Lieutenant Brenden Satori was present during these events in the cell with the officers and Draper. Defendant Satori knew they were preparing to taser Draper, and he had multiple opportunities prior to each event to prevent the harm from occurring.

The Defendant failed to take any steps to prevent the harm from occurring – i.e. ordering them to stop or telling them to cease further taser deployments. Draper suffered harm as result of Defendant Satori's failure to intervene or to act.

Claim No. 6: As described above, Officer Matthew Hulsey and Nurse/Reserve Officer Michael Gregory engaged in unreasonable use of force against the decedent Jerod Scott Draper by tasing him on multiple occasion while he was restrained. Captain Dustin Cundall, the Jail Commander and supervisor of the facility, and Sheriff Rodney Seelye knew the individual

defendants had a practice of discharging tasers on restrained inmates. Furthermore, it is undisputed that this was a practice and unwritten policy of the Harrison County Jail, approved by Captain Dustin Cundall and Sheriff Rodney Seelye. As a result of the supervisors' unwritten policy, Jerod Draper was injured.

Claim No. 7: As described above, Officer Matthew Hulsey, Lieutenant Brenden Satori, Captain Dustin Cundall, and Nurse/Reserve Officer Michael Gregory engaged in unreasonable use of force against the decedent Jerod Scott Draper by placing him in the restraint chair without justification and for unlawful duration. Captain Dustin Cundall, the Jail Commander and supervisor of the facility, and Sheriff Rodney Seelye knew the individual defendants had a practice of placing inmates in the restrain chair for one hour and fifty-nine minutes. Once an inmate or pretrial detainee was placed in the chair, the individual stayed in the chair for the full duration, even if the individual calmed down such that further restraint was unnecessary.

This practice was essentially punishment for individuals deemed unruly, and it was employed as such against Jerod Draper. Furthermore, it is undisputed that the one hour and fifty-nine minute "ride," a term adopted by the jail staff and administration, was a practice and written policy of the Harrison County Jail, approved by Captain Dustin Cundall and Sheriff Rodney Seelye. As a result of the supervisors' written policy, Jerod Draper was injured.

Claim No. 8:   The Plaintiff will prove by a preponderance of the evidence that a constitutional violation occurred and that the Harrison County Sheriff's Department is also liable. As described above, Officer Matthew Hulsey and Nurse/Reserve Officer Michael Gregory engaged in unreasonable use of force against the decedent Jerod Scott Draper by tasing him on multiple occasion while he was restrained. At the time, it was the unwritten policy of the

Harrison County Jail by its policy maker, Sheriff Rodney Seelye, to permit the use of tasers on multiple occasions against restrained inmates.

Though the policy was not reduced to writing, Sheriff Rodney Seelye testified that the practice was condoned and approved by him. It was persistent and widespread, such that even the Jail Nurse was permitted to carry and to use a taser on restrained inmates. Due to the policy, Plaintiff was subjected to multiple unreasonable uses of force.

Claim No. 9: The Plaintiff will prove by a preponderance of the evidence that a constitutional violation occurred and that the Harrison County Sheriff's Department is also liable. As described above, Nurse/Reserve Officer Michael Gregory was deliberately indifferent to the serious medical needs of the Jerod Scott Draper. At the time, it was the policy of the jail that Nurse Gregory was permitted to shift between his duties as reserve officer and his duties as jail nurse. The Defendants Sheriff Rodney Seelye was the ultimate policy-maker for the Harrison County Jail, and he approved of Nurse Gregory practice, despite the inherent conflicts in providing medical attention and supervising a jail.

Nurse Gregory's use of the taser, while in his nursing uniform and supposedly present for medical reasons, was approved and condoned by the Sheriff. Due to the policy, Plaintiff's serious medical needs were completely ignored, and Draper was harmed.

Claim No. 10: The Plaintiff will prove by a preponderance of the evidence that a constitutional violation occurred and that the Harrison County Sheriff's Department is also liable. The Harrison County Sheriff's Office failed to train its employees on two issues relevant to this case: (1) recognizing drug overdose; (2) proper uses of five point restraint chairs; and (3) use of tasers.

The training program was not adequate to train its officers to properly handle, to properly recognize, and to properly address recurring situations, such inmate drug overdose and need for immediate medical attention, use of five point restraint chair, and use of tasers. The Sheriff Rodney Seelye knew that it was highly predictable that this failure to train would result in failures to provide adequate medical care and use of excessive force by correctional officers. If the jail officers had received any training regarding recognizing the sign of drug overdose – i.e. excessive sweating, chest pains, stomach pain, delirious behavior, restlessness and agitation, high temperature, rapid breathing, changes in personality or behavior, etc. – Draper would not have suffered the agonizing death visible on the jail video. In addition, if the jail officers has received training on the proper uses of the restraint chairs and tasers, Draper would not have been subjected to the torture he endured.

The Harrison County Sheriff's Office failure to provide adequate training on these issues caused the denial of adequate medical care and the unreasonable uses of force in violation of the Plaintiff's constitutional rights.

Claim No. 11: The Plaintiff will prove by a preponderance of the evidence that a constitutional violation occurred and that Advanced Correctional Healthcare is also liable. Advanced Correctional Health is a private corporation contracted with Harrison County Jail and Sheriff's Office to provide medical care to pretrial detainees and inmates that would ordinarily be provided by the County. As such, Advanced Correctional Healthcare was reached an understanding with Harrison County regarding the provision of medical care, and Advanced Correctional Healthcare knowingly participated in the joint activity.

As described above, the Plaintiff was denied adequate medical care while in the custody of the Harrison County Sheriff's Department. At the time, Advanced Correctional Healthcare

had a policy of staffing Harrison County with an on-call Nurse Practitioner. On October 4, 2021, the Nurse Practitioner was Roy Washington. The Defendant Harrison County and Advanced Correctional Healthcare acknowledge that it was their practice to permit jail staff and officers to contact the Nurse Practitioner for medical diagnosis, for prescribing medication, and for advising jail staff on courses of medical treatment. This was regularly done without the Nurse Practitioner actually viewing or seeing the patients because the Nurse Practitioner was not always at the jail.

On this particular occasion, Jerod Draper was prescribed Librium medication, presumably as part of a detoxification procedure approved by a physician. However, there is disagreement between the Defendants as to who prescribed the medication. Harrison County maintains that the medication was prescribed and ordered by Roy Washington, but Advanced Correctional Healthcare has provided phone records, including text and call records, that prove Roy Washington was never contacted. The diffusion of responsibility for medical care at Harrison County Jail has made it difficult to determine who the individual actors are.

Under the circumstances, the Plaintiff intends to prove that the Defendants joint practice of failing to staff the Harrison County Jail with the appropriate physician, as required by their contract, caused the failure to provide adequate medical care to Jerod Draper. The Defendants knew of the staffing deficiency and allowed it to continue.

Claim No. 12: Plaintiff will prove by a preponderance of the evidence that, on October 4, 2018, Plaintiff Jerod Scott Draper denied medical care while in the custody of the Harrison County Sheriff's Department and under the supervision of Roy Washington, as the on-call nurse practitioner. The Plaintiff had a serious medical need that was so obvious even someone who is not a doctor would recognize that it required treatment.

Assuming the Harrison County Jail employees continue to insist Nurse Practitioner Roy Washington treated the decedent, the Plaintiff beliefs that he was aware of or strongly suspected facts showing a strong likelihood that Plaintiff had a serious medical need – a drug overdose – but refused to confirm whether these facts were true. The Defendant failed to take reasonable measures to provide treatment for the serious medical need.

As Roy Washington is a medical professional, the inference may be drawn that he consciously failed to take reasonable measures because his failure to act was such a substantial departure from accepted professional judgment, practice, and standards that it showed a complete abandonment of medical judgment. As a result of Defendant's inactions, Plaintiff was harmed, suffering unnecessary pain and death.

If Harrison County employee Kim Jennings statements are true, Roy Washington was advised of Jerod Draper's condition, he prescribed Librium, and then, provided no follow-up treatment as the Plaintiff's condition worsened.

<u>Claim No. 13:</u> Jerod Draper's death was caused by the wrongful acts of Harrison County Jail and Sheriff's Office employees, namely the intentional deprivation of adequate medical care. The jail had a duty to provide constitutionally adequate medical care. Instead of providing the medical care that would have prevented Jerod's death, the individual defendants chose to ignore this duty and inflict further pain and suffering via tasing, exacerbating his already precarious medical condition. As a result of their intentional actions and intentional omissions, Jerod Draper died.

The evidence will show that Jerod Draper had a genuine, substantial, and ongoing relationship with his child at the time of his death and that she was his legal dependent. It is

undisputed that Draper had lunch with his child and her grandfather the day before he died, and they went shopping for her upcoming vacation.

Respectfully Submitted,

/s/ Zachary F. Stewart
Zachary F. Stewart, #35379-39
Co-Counsel for Plaintiff
530 East Court Ave.
Jeffersonville, Indiana 47130
T: 502-548-9890
FAX: 812-282-3188
EM: zach@zacharyfstewartlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 10th day of August, 2021, a true and complete copy of the foregoing document was filed electronically with the Court and was served electronically upon all counsel of record via email generated by the Court's ECF system to the following:

All electronically ECF Registered Parties.

/s/ Zachary F. Stewart
Zachary F. Stewart, #35379-39
